IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**EUGENE J. LOCKHART, JR.,**

    **Plaintiff,**

v.                                                     **Case No. 3:14-CV-027-G-BK**

**TEXAS HEALTH PLANO, et al.,**

    **Defendants.**

### AMENDED FINDINGS, CONCLUSIONS, AND RECOMMENDATION

This cause was referred to the undersigned for pretrial management. The Court now considers Defendants' various *Motions to Dismiss*. Doc. 20; Doc. 25; Doc. 27; Doc. 28; Doc. 29; Doc. 33; Doc. 43. For the reasons that follow, it is recommended that Dr. Duckworth's *Motion to Dismiss or, in the Alternative, Motion for Summary Judgment*, Doc. 43, be **GRANTED**, and the claims against the remaining Defendants be **DISMISSED WITHOUT PREJUDICE**.

**A. Procedural History**

In May 2014, Plaintiff filed an amended complaint against (1) Texas Health Presbyterian Hospital Kaufman ("Texas Health Kaufman"); (2) Texas Health Presbyterian Hospital Plano ("Texas Health Plano"); (3) East Texas Medical Center ("ETMC"); (4) Dr. Azucena Duckworth, individually and in her official capacity as the Medical Director of the Federal Detention Center at FCI Seagoville;[1] (5) Dr. Stuart Spitzer, individually and in his official capacity as a physician for Texas Health Kaufman; and (6) Dr. Humera Ahmed, individually and in her official capacity as a physician for Texas Health Plano. Doc. 14 at 2-3.

---

[1] The claims against Dr. Duckworth in her official capacity have since been dismissed as frivolous. Doc. 18.

Plaintiff alleges that in December 2011, he began experiencing severe abdominal pain while imprisoned at FCI Seagoville. Doc. 14 at 5. He avers that despite being contacted by a correctional officer, Dr. Duckworth repeatedly ordered the officer to have Plaintiff lie down and drink water rather than have him moved to the infirmary. Doc. 14 at 5. Plaintiff contends that on December 30, 2011, correctional officers witnessed him in an unresponsive state and had medical personnel take him to the infirmary where he lay without any medical attention for two hours until an ambulance crew arrived from ETMC. Doc. 14 at 6. Plaintiff asserts that Dr. Duckworth violated his Eighth Amendment right by failing to provide him with adequate medical care and by being deliberately indifferent to his substantial medical needs. Doc. 14 at 3, 9-10.

Plaintiff alleges that ETMC then breached its duty of care while transporting him from prison to the hospital by inserting an unsterilized needle into his arm which caused a serious infection and ultimately required surgical intervention. Doc. 14 at 3-4, 6-8, 11-12. He claims that Dr. Spitzer and Dr. Ahmed both breached their duty to treat him correctly by not noticing and removing the dirty needle in his arm and treating his resulting infection, and Texas Health Kaufman and Texas Health Plano are liable on a theory of respondeat superior. Doc. 14 at 3, 7, 10-11. Defendants have moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 20; Doc. 25; Doc. 27; Doc. 28; Doc. 29; Doc. 33; Doc. 43. Dr. Duckworth alternatively has moved for summary judgment. Doc. 43.

**B. Applicable Law**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotes omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted). Nevertheless, when ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Id.*

**C. Parties' Arguments and Analysis**

Dr. Duckworth moves to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) or, alternatively, for summary judgment. Doc. 57 at 6. In addition to various other arguments, she asserts that the Court should dismiss this lawsuit because Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Doc. 57 at 15-18.

Plaintiff responds that his claim did not require administrative exhaustion under section 1997e(a) because that statute only applies to state prisoners while 28 U.S.C. § 1915 applies to federal prisoners, and his complaint passed section 1915 screening. Doc. 52 at 1, 3. Additionally, Plaintiff alleges that he could not have exhausted his administrative remedies because he was not incarcerated at FCI Seagoville, but was released on bond after the incident

with Dr. Duckworth occurred.  Doc. 52 at 1-2, 4.  Plaintiff contends that because the government agreed to him being released to home confinement shortly after he was returned back to FCI Seagoville from the hospital, there was no need for him to exhaust his remedies because there was no dispute to resolve.  Doc. 52 at 5-6.

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also* *Clifford v. Gibbs*, 298 F.3d 328, 331–32 (5th Cir. 2002) (holding that the PLRA's exhaustion requirement is mandatory, not discretionary).  Despite Plaintiff's arguments to the contrary, the PLRA's exhaustion requirement does apply to a federal inmate suing a federal employee under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).  *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (holding that federal prisoners "must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit."). Moreover, section 1997e(a)'s exhaustion requirement is completely separate from the screening process that all federal complaints sought to be filed *in forma pauperis* must go through under section 1915.  The latter process does not involve exhaustion, but is simply a screening to ensure that frivolous complaints do not get filed *in forma pauperis*.  In this case, Plaintiff must complete both the administrative exhaustion and the section 1915 screening requirements.

Even if an inmate seeks relief that cannot be granted by the administrative process, the inmate still must exhaust his administrative remedies.  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citation omitted).  The Fifth Circuit takes a "strict approach" to the PLRA's exhaustion requirement.  *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).  Accordingly, district courts

"have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint" and "have no discretion to waive the PLRA's pre-filing exhaustion requirement." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).  In short, if an issue arises during the term of a federal inmate's confinement, the inmate is required to exhaust his administrative remedies.  *See* 28 C.F.R. § 542.10(b) (stating that the Bureau of Prisons' administrative remedy program applies to, *inter alia*, former inmates for issues that arose during their confinement).

Plaintiff was incarcerated at FCI Seagoville from March 23, 2011 until December 30, 2011, when he was taken to the hospital for treatment.  Doc. 58 at 4, 14.  He was returned to FCI Seagoville on January 21, 2012 and remained there until January 25, 2012 when he was released on bond.  Doc. 58 at 4, 14.  Plaintiff filed no administrative grievance regarding the medical treatment he received at FCI Seagoville.  Doc. 58 at 7-8.  Accordingly, he did not exhaust his administrative remedies as he was required to do.  *Porter*, 534 U.S. at 524.  Despite his claims that exhaustion was not the correct route to pursue in light of his imminent release on bond, this Court has no discretion to waive the exhaustion requirement, which must be fulfilled even if Plaintiff was seeking relief that could not be granted by the administrative grievance process. *Woodford*, 548 U.S. at 85; *Gonzalez*, 702 F.3d at 788.  Although Plaintiff claims that he could not have exhausted his remedies because he was no longer at FCI Seagoville, he was returned there following his hospital day for a period of four days and could have filed an administrative grievance during that time frame.  Moreover, the BOP's administrative regulations make clear that he could have pursued administrative relief even after he was released on bond.  28 C.F.R. § 542.10(b).  Now, however, the time for exhausting administrative remedies has expired.  *See* 28 C.F.R. §§ 542.14 (a), (b) (setting forth deadlines for submission of an administrative complaint

and circumstances under which an extension is allowed, including physical incapacitation). Because Plaintiff did not exhaust his administrative remedies, Dr. Duckworth's motion to dismiss should be **GRANTED**, and Plaintiff's claim against her should be **DISMISSED WITH PREJUDICE**.  *See McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 561-62 (5th Cir. 1998) (noting that dismissal with prejudice is appropriate if it appears that no relief can be granted under any set of facts that could be proven consistent with the plaintiff's allegations).

Now that the only claim supporting federal jurisdiction in this Court has been recommended for dismissal, the Court must reassess its subject matter jurisdiction. *Enochs v. Lampasas Cty.*, 641 F.3d 155, 161 (5th Cir. 2011) (stating that the district court should reconsider its jurisdiction over "state law claims as of the moment" the federal claims are deleted from the case).  In determining whether to relinquish supplemental jurisdiction over pendent state law claims, the court looks to the statutory factors set forth in 28 U.S.C. § 1367(c), as well as to the common law factors of judicial economy, convenience, fairness, and comity.  *Id.* at 158-59 (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (setting forth the common law factors)).  The statutory factors are: (1) whether the state claims raise novel or complex issues of state law; (2) whether the state claims substantially predominate over the federal claims; (3) whether the federal claims have been dismissed; and (4) whether there are exceptional circumstances or other compelling reasons for declining to exercise jurisdiction.  28 U.S.C. § 1367(c); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966) (setting forth the common law precursor to section 1367(c)).

Weighing the statutory factors in this case, each factor favors relinquishing jurisdiction except the first because the state claims completely predominate, the federal claims have been

recommended for dismissal, and there are no compelling reasons for retaining jurisdiction.[2] [28 U.S.C. § 1367(c)](). Moreover, this case has not proceeded far in this Court and exercising supplemental jurisdiction would not serve the values of judicial economy, convenience, fairness, and comity. *See [Carnegie-Mellon, 484 U.S. at 350]()*; *see also [Enochs, 641 F.3d at 163]()* (holding that the district court abused its discretion by not remanding a case after the voluntary dismissal of the federal claims when the case became a purely Texas state law dispute, was still in its infancy, and no discovery had occurred or trial date had been set). Therefore, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law medical negligence claims and should **DISMISS WITHOUT PREJUDICE** those claims against the remaining Defendants.

---

[2] Although all of the remaining Defendants raise statute of limitations defenses, dismissal of the state law claims will not jeopardize Plaintiff's arguments in opposition to this affirmative defense. The limitations period will be tolled for a period of 60 days following the dismissal of this lawsuit if Plaintiff refiles the action in the proper state court within that time period. *See* [TEX. CIV. PRAC. & REM. CODE § 16.064]() (providing that "[t]he period between the date of filing an action in a trial court and the date of a second filing of the same action in a different court suspends the running of the applicable statute of limitations for the period if: (1) because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed or the judgment is set aside or annulled in a direct proceeding; and (2) not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a court of proper jurisdiction.").

**D. Conclusion**

For the foregoing reasons, Dr. Duckworth's *Motion to Dismiss or, in the Alternative, Motion for Summary Judgment* (Doc. 43) should be **GRANTED**. The claims against Texas Health Kaufman, Texas Health Plano, ETMC, Dr. Spitzer, and Dr. Ahmed should be **DISMISSED WITHOUT PREJUDICE**.

**SO RECOMMENDED** on November 6, 2014.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE